J-S30019-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEX SCOTT SIMPSON | : | |
| | : | |
| Appellant | : | No. 1675 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 27, 2019
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000153-2013

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEX SCOTT SIMPSON | : | |
| | : | |
| Appellant | : | No. 1676 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 27, 2019
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s):  CP-33-CR-0000021-2013

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:          FILED NOVEMBER 06, 2020

       Alex Scott Simpson appeals from the judgment of sentence entered

following the revocation of his probation. His counsel filed a petition to

_____

[*] Former Justice specially assigned to the Superior Court.

withdraw as counsel and an Anders[1] brief. Simpson also filed a brief. We affirm and grant counsel's petition to withdraw.

In 2013, at docket number CP-33-CR-000153-2013 ("Docket 153"), Simpson pled guilty to one count of aggravated assault, 18 Pa.C.S.A. § 2702(a)(1). The trial court sentenced him to three to six years' imprisonment, followed by three years' probation. On that same date, he pled guilty at docket number CP-33-CR-000021-2013 ("Docket 21"), to aggravated assault, 18 Pa.C.S.A. § 2702(a)(3). The court sentenced him to one to six years' imprisonment followed by four years' probation, concurrent to the sentence imposed at Docket 153.

In September 2019, the court held a probation revocation hearing, where Simpson waived his right to the Gagnon I[2] hearing, and the court took judicial notice of new convictions from Franklin County for theft of services and possession of drug paraphernalia. At the Gagnon II hearing, counsel stated that he reviewed the pre-sentence investigation report ("PSI") with Simpson. N.T., 9/27/19, at 2. The PSI included a list of the probation violations, including the new convictions,[3] for which he received probation sentences, and that Simpson failed to report for probation intake, he engaged

_____

[1] Anders v. California, 386 U.S. 738 (1967).

[2] Gagnon v. Scarpelli, 411 U.S. 778 (1973).

[3] The PSI also listed all crimes that were charged in the new cases, including criminal trespass, simple assault, recklessly endangering another person, resisting arrest, and harassment. Further, the affidavits of probable cause to support the new charges were attached to the PSI.

in threatening and overt behavior, and he failed to make payments since his release. PSI, dated Sept. 2019, at 1-3. The PSI further stated that the first new offense occurred 41 days after Simpson's release from prison and the second offense occurred "82 days later." Id. at 3. At the Gagnon II hearing, Counsel noted that the recommendation in the PSI was for a sentence of two to five years' incarceration, with credit from September 13, 2019, and with a recommendation for motivational boot camp, which Simpson wanted to complete. Id. at 2-3.

At Docket 153, the court sentenced Simpson to ten to 20 years' imprisonment. At Docket 21, the court imposed a concurrent sentence of five to ten years' imprisonment. Simpson received credit for all time spent incarcerated on the convictions. In imposing sentence, the trial court stated:

> I reviewed the [PSI], considered your age, your background, your prior record, everything contained in the [PSI], everything necessary for sentencing, and the – the cases you're involved in are parole, probation now from Jefferson County were an aggravated assault . . . on January 1st of 2013, attempted to cause serious bodily injury is what you pled to, and then January 3rd causing bodily injury to the chief now, Matt Conrad. You almost maxed those sentences out. In a short time, you committed the two new offenses. So I think because this is a new charge it calls for total confinement. Because of the violent nature of your past offenses, I don't think you're appropriate for boot camp. So I'm going to revoke 21 of 13, F2, and sentence you to no less than 5 to 10 years in a state correctional institution with credit for all time served. I'm going to revoke the felony 1 at 153 of 13 and sentence you to no less than 10 to 20 years concurrent in a state correctional institution. . . . .You're going to get almost six years of credit. I think you need the other four to sit.

- 3 -

N.T., 9/27/19, at 5-6. Simpson stated that he thought the sentence was harsh, and the court stated:

> I just think because I can't figure out the credit I'd have gave you – I'd have given you 15 to 30 if it was up to me. You almost killed a man. You got into a fight with a police officer two days later, and you did get paroled and committed new charges within days of getting out. You can't even put it in months.

Id. at 7.

Simpson filed a motion for reconsideration of sentence, which the trial court denied. The trial court granted a request to file a notice of appeal nunc pro tunc, and Simpson filed a notice of appeal at each docket number.

In the trial court's opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the court noted that Simpson was convicted at Dockets 153 and 21 for "violent, potentially lethal assaults," and that the new convictions "stemmed from violent, assaultive conduct." Trial Court Opinion, filed Jan. 13, 2020, at 1 ("1925(a) Op."). The court reasoned that the six years in prison did not rehabilitate him, and it had "little reason to believe that boot camp would succeed . . . and every reason to believe that he posed a continuing threat to the people around him if not re-incarcerated for as long as possible." Id. at 1-2.

As noted above, Simpson's counsel filed an Anders brief. Before we assess the substance of counsel's Anders brief, we must first determine whether counsel's request to withdraw meets certain procedural requirements. See Commonwealth v. Goodwin, 928 A.2d 287, 290

(Pa.Super. 2007) (en banc). An Anders brief that accompanies a request to withdraw must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

Commonwealth v. Santiago, 978 A.2d 349, 361 (Pa. 2009). Counsel must also provide a copy of the Anders brief to the client, and a letter that advises the client of the right to "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the Anders brief." Commonwealth v. Orellana, 86 A.3d 877, 880 (Pa.Super. 2014) (citation omitted). If counsel has satisfied these requirements, we then conduct "a full examination" of the record "to decide whether the case is wholly frivolous." Commonwealth v. Dempster, 187 A.3d 266, 271 (Pa.Super. 2018) (en banc) (quoting Anders, 386 U.S. at 744).

Here, in the Anders brief, counsel provides a procedural and factual history of the case, with citations to the record, discusses the issues arguably supporting the appeal, and explains why counsel concludes those issues are frivolous. Counsel served a copy of the Anders brief upon Simpson, and his

letter to Simpson advised Simpson that he could raise any additional issues before this Court pro se or with private counsel. Petition to Withdraw as Counsel, dated March 18, 2020. The Anders brief satisfies the necessary requirements. We will therefore address the issue counsel has identified.

Counsel raises the following issue in the Anders brief:

> Whether the Trial Court committed an abuse of discretion when it revoked [Simpson's] probation and re-sentenced him to sentences aggregating to a minimum of ten (10) years to a maximum of twenty (20) years in a state correctional institution given the circumstances of the case.

Anders Br. at 4.

The Anders brief raises a challenge to the discretionary aspects of Simpson's sentence. Before addressing the merits of his claim, we must determine whether (1) the appeal is timely; (2) the appellant preserved the issue in a post-sentence motion or at sentencing; (3) the brief includes a concise statement of the reasons relied upon for allowance of appeal; and (4) the appellant raised a substantial question. Commonwealth v. Edwards, 194 A.3d 625, 636 (Pa.Super. 2018).

Simpson filed a timely notice of appeal, he preserved the issue in a post-sentence motion, and the Anders brief includes a concise statement of the reasons relied upon for allowance of appeal. We must now determine whether the claim—that the sentence was manifestly unreasonable in that it was excessive and constituted too severe a punishment considering the facts of the case and the probation violation and the court did not justify the severity—raises a substantial question for our review.

Whether a defendant raises "a substantial question must be evaluated on a case-by-case basis." Commonwealth v. Radecki, 180 A.3d 441, 468 (Pa.Super. 2018) (citing Commonwealth v. Paul, 925 A.2d 825, 828 (Pa. Super. 2007)). "[A] substantial question exists 'when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.'" Id. (quoting Commonwealth v. Phillips, 946 A.2d 103, 112 (Pa. Super. 2008).

This Court has held that "[b]ald allegation of excessiveness" do not raise a substantial question. Commonwealth v. Watson, 228 A.3d 928, 935 (Pa.Super. 2020). Similarly, we have held that an appellant fails to raise a substantial question when he raises an "excessiveness claim premised on the imposition of consecutive sentences and inadequate consideration of mitigating factors." Id.

The claims raised here merely allege the sentence is excessive, and that the court failed to consider the circumstances of the case, and therefore fails to raise a substantial question. See Radecki, 180 A.3d 441; Watson, 228 A.3d at 935.

Even if Simpson presented a substantial question for our review, we would conclude it lacked merit.

In the Anders brief, counsel notes that Simpson agreed that some incarceration was appropriate, and was willing to accept the recommendation of Jefferson County Adult Probation that the court impose a sentence of two

to five years' incarceration with a boot camp recommendation. It stated the current violations were the only probation violations.

The Anders brief then notes that the trial court emphasized the violent nature of the original convictions, and that Simpson's probation violations occurred shortly after he was released from prison. It further states that the PSI revealed that Simpson received probation sentences on the new convictions. Counsel concluded that the trial court's reasons, as enumerated at sentencing and in the 1925(a) opinion, were sufficient justification for the sentence imposed.

The trial court has discretion when sentencing a defendant, and absent an abuse of that discretion, we will not disturb its sentencing decision. Commonwealth v. Lilley, 978 A.2d 995, 998 (Pa.Super. 2009). An abuse of discretion has occurred where "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." Commonwealth v. Perry, 32 A.3d 232, 236 (Pa. 2011) (quoting Commonwealth v. Walls, 926 A.2d 957, 961 (Pa. 2007)).

At sentencing, the court considered the crimes and circumstances of the case, and the goals of the Sentencing Code, and the sentences it imposed for the violations of probation were reasonable. We agree with counsel that this claim is frivolous.

Simpson filed a pro se response, raising the following issues:

> 1. Whether the Trial Court committed revers[i]ble error when it erroneously revoked [Simpson's] probation by relying on an inaccurate Presentence Investigation Report

- 8 -

("PSI") prepared by the Jefferson County Probation Department. Alleging probation violations, that technically, are not probation violations at all.

2. Whether the Trial Court committed revers[i]ble error when it sentenced [Simpson] to an aggregated sentence of ten to twenty years for allegedly violating a four[-year] term of probation. A possible double jeopardy violation.

Simpson's Reply at 3. In the brief, Simpson argues four issues – the court erred when it stated the new crimes were for violent conduct, he was never informed he had to report to probation and not informed of the conditions of probation, his counsel did not speak with him prior to the hearing, and the sentence violates double jeopardy.

Simpson argues that his new convictions were for theft of services and possession of drug paraphernalia, and that the simple assault and recklessly endangering another person convictions were dismissed. Therefore, he claims that he was not convicted of new crimes involving "violent assaultive conduct." Simpson's Reply at 5.

This claim lacks merit. At sentencing, the trial court considered that the crimes for which he was on probation were assaultive, and that he violated probation shortly after being released from incarceration. That the court mentioned in the 1925(a) opinion that the new convictions "stemmed" from assaultive conduct, does not support a claim that the court abused its discretion in imposing sentence.

Simpson also claims that when he was released from prison, he was informed his sentence at both dockets was "completed," and he was not asked to sign any form acknowledging that he would report to the probation

department. Simpson's Reply at 8. Further, he asserts that he never signed a document acknowledging the conditions of probation. Id. at 10-11. He claims he was never instructed to report to the probation department, and notes that the probation department did not issue a warrant for his arrest based on a failure to report.

Simpson never raised a claim before the trial court that he was not informed of his probationary status or of the probationary conditions, including that he had to report to the probation department. He has therefore waived any claim that he was unaware he had to abide by probationary conditions. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Simpson further claims he did not speak with counsel prior to his Gagnon II hearing, and counsel ignored the letters Simpson sent to him.

Simpson's claim that counsel did not speak with him, and ignored his letters, raises a counsel ineffectiveness claim, which, except for limited exceptions not applicable here, cannot be raised on direct appeal. Commonwealth v. Holmes, 79 A.3d 562, 576 (Pa. 2013).

Simpson also "questions the legality of the 10 to 20 year sentence as a double jeopardy violation," claiming he served the six year sentence for his initial convictions, and double jeopardy protects him from a second prosecution.

This claim also lacks merit. Imposing sentence for a violation of probation does not constitute a double jeopardy violation. See Commonwealth v. Hunter, 468 A.2d 505, 508 (Pa.Super. 1983).

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2020